**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO.: _____**

| | |
|---|---|
| Robert L. Davidson,<br><br>        Plaintiff,<br><br>    vs.<br><br>HSBC Bank Nevada NA, a foreign National Bank,<br>Corporate Receivables, Inc., and<br>HSBC Retail Credit (USA), Inc.<br><br>        Defendants. | **COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

**PRELIMINARY STATEMENT**

1.    This action is, in part, a declaratory judgment action based on Defendants'

    breach of contract on an alleged personal guarantee and their subsequent

    threats to collect amounts not due or owing under that alleged guaranty; and,

    in part, an action for violations of the Fair Credit Reporting Act ("FCRA")

    15 U.S.C. § 1681 by one or more Defendants.

**JURISDICTION AND VENUE**

2.    Jurisdiction of this Court arises under 28 U.S.C. § 1331, pursuant to 15 U.S.C.

    § 1681 et seq., pursuant to 28 U.S.C. § 1332 as the amount in controversy

    exceeds $75,000 and the parties are citizens of different states, and pursuant to

    28 U.S.C. § 1367 for pendent state law claims.

3.    Venue is proper in this District because the acts and transactions occurred

here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4.    Plaintiff Robert L. Davidson is a natural person who lives in the City of

Minnetonka, County of Hennepin, State of Minnesota.

5.    Defendant HSBC Bank Nevada NA ("HSBC"), is a foreign National Bank

formed in the State of Nevada, doing business in the City of Minnetonka,

County of Hennepin, State of Minnesota, and operating from an address of

HSBC Bank Nevada, N.A., Charter Number 22675, 1111 North Town

Center Drive, Las Vegas, NV 89144.

6.    Defendant Corporate Receivables, Inc., ("CRI") is a foreign corporation and

an agent of Defendant HSBC, doing business in the City of Minnetonka,

County of Hennepin, State of Minnesota, and operating as a collection

agency from an address of 3003 N. Central Ave. Phoenix, Arizona 85012.

7.    Defendant HSBC Retail Credit (USA), Inc. ("HRC") is a foreign corporation

formed in the State of New York, doing business in the City of Minnetonka,

County of Hennepin, State of Minnesota, and operating from an address of

One HSBC Center, 27th Floor, Buffalo, New York, 14203-2827, with their

registered agent of process as Scott D. Miller.

## FACTUAL ALLEGATIONS

### *Background*

8.   Plaintiff is a prominent businessman and attorney of more than 53 years.

9.   Plaintiff has numerous business and real estate interests, which have a net worth of several million dollars.

10.   Plaintiff's personal credit directly affects millions of dollars in financing and other transactions that occur in the course of a year within his various real estate and business holdings.

11.   Damage to Plaintiff's personal credit rating by these Defendants has and will directly and negatively affect his ability to borrow money and finance existing and future business and real estate ventures.

### *Offer of Personal Guaranty*

12.   On or about March 8, 2006, Plaintiff offered to provide a personal guaranty on a business credit card account marketed by Menard's home improvement store and underwritten and issued by Defendant HRC. *See attached Exhibit 1.*

13.   Exhibit 1 was a bona fide offer to enter into a contract with Defendant HRC to provide a personal guaranty for a third party, Migizi Construction LLC ("Migizi"), a Wisconsin contractor.

14.   Pages one and two of Exhibit 1 were the complete terms of the offer to enter into a contract between Plaintiff and Defendant HRC.

15.   No other documents were made part of this offer by Plaintiff to Defendant HRC, by reference of otherwise, implicitly or explicitly.

16.   The offer to contract made in Exhibit 1 was predicated upon two essential conditions that Plaintiff included in his March 8, 2006, offer transmitted to Defendant HRC.

17.   The first essential condition of the personal guaranty offered by Plaintiff required Defendant HRC to limit the line of credit extended to Migizi to no more than $10,000.

18.   The second essential condition of the personal guaranty offered by Plaintiff required Defendant HRC to provide timely notice to Plaintiff in the event of a default by Migizi's.

19.   These two conditions were essential terms to the contractual offer made by Plaintiff to provide a personal guaranty to Defendant HRC, and not mere surplusage.

20.   There were arms-length negotiations over the telephone between Plaintiff and Defendant HRC's representative in which they verbally agreed to such terms and those terms were then reduced to a writing, namely Exhibit 1, which was in turn transmitted by facsimile to Defendant HRC for its

acceptance or rejection of this offer to contract for the alleged personal guaranty.

21. There was consideration provided in this offer to Plaintiff, namely, the extension of credit for Migizi within this contract.

22. There was consideration provided in this offer to Defendant HRC, namely, the opportunity to extend credit and earn interest income from Migizi within this contract.

23. Defendant HRC did not object to the conditions contained in Exhibit 1 and instead accepted them as evidenced by their conduct in later issuing a line of credit to Migizi.

24. Defendant HRC also received this offer complete from Plaintiff as evidenced by the successful facsimile transmission sheet attached as page 3 of Exhibit 1.

25. By later issuing this line of credit to Migizi, Defendant HRC indicated by conduct its acceptance all of the conditions placed on this offer to contract for a personal guaranty made by Plaintiff and were thereby bound by the terms which limited its right to exercise its rights to the personal guaranty against Plaintiff.

## BREACH OF CONTRACT

26.   Despite the express terms of Exhibit 1, Defendant HRC later breached its contract to Plaintiff by issuing a credit line to Migizi of $50,000 and thereby nullified the contract for the personal guaranty between the Plaintiff and Defendant HRC.

27.   Defendant HRC never gave Plaintiff notice that it had provided an increased line of credit to Migizi and Plaintiff never consented to this unilateral change in the terms of the contract.

28.   Despite the express terms of Exhibit 1, Defendant HRC also breached its contract to Plaintiff by failing to promptly notify Plaintiff of Migizi's defaults on its obligation, and thereby Defendant HRC nullified the contract for the personal guaranty between the Plaintiff and Defendant HRC.

29.   On or before April 1, 2008, Migizi construction was in default on its obligation.

30.   The first time Plaintiff ever received constructive but not effective notice of this default was when Defendant CRI sent a dunning letter to him on or about March 12, 2009.

31.   Defendant HRC did not timely notify Plaintiff of Migizi's defaults on its obligation, thereby making Plaintiff's ability to timely cure such defaults a nullity.

32.  To date, Defendant HRC has never provided notice to Plaintiff of Migizi's default on this Menard's credit obligation or of its intent to exercise its rights under the alleged personal guaranty by Plaintiff.

### *Defendant HRC Has Caused Its Own Damages*

33.  At all relevant times during this matter, Plaintiff was effectively Migizi's sole source of income.

34.  Plaintiff had the right and present ability to withhold construction draws from Migizi in order to pay its outstanding obligations.

35.  If Defendant HRC had advised Plaintiff timely that Migizi was in default on its obligations under the Menard's account, Plaintiff could have and would have acted immediately to cure such default by making payment with withheld construction draws.

36.  Moreover, had Defendant HRC advised Plaintiff that it had increased Migizi's line of credit to $50,000, Plaintiff would have promptly objected and reminded Defendant HRC of its contractual duty to limit this line of credit to Migizi to $10,000.

37.  By increasing the credit line to over the agreed-upon $10,000 limit, and by not providing timely notice as required by Plaintiff's offer of a personal guaranty, Defendant HRC prevented Plaintiff from timely acting to cure any possible default of Migizi for which Plaintiff would have been responsible.

38.   Defendant HRC thereby negligently and or intentionally breached its contract with Plaintiff, failed to mitigate its potential damages, and thereby relieved Plaintiff of any liability as to the alleged personal guaranty for Migizi's obligation on the Menard's account.

***Claim in the Alternative: Rejection of Counteroffer and Therefore No Contract***

39.   Plaintiff incorporates all of the above paragraphs as though fully stated herein.

40.   Exhibit 1 was a counteroffer to Defendant HRC's original offer to contract with Plaintiff for a personal guaranty on the Menard's line of credit.

41.   Defendant HRC did not agree to the terms that Plaintiff included in his offer contained in Exhibit 1, namely, that Migizi's line of credit would be limited to $10,000 and that Defendant HRC would notify him in a timely manner if Migizi defaulted on the line of credit.

42.   Through its inaction and course of conduct, Defendant HRC never accepted Plaintiff's counteroffer and the time to now do so has expired.

43.   Plaintiff has hereby unequivocally withdrawn his offer to enter into a contract to provide a personal guaranty to Defendant HRC for the Migizi Menards's account.

44.   Because Defendant HRC did not accept Plaintiff's personal guaranty terms, there was no meeting of the minds between the parties and no contract was ever formed between the parties for Plaintiff to provide a personal guaranty.

45.   Therefore, there was never a contract between Plaintiff and Defendant HRC.

46.   Defendant HRC's attempts to enforce a non-existent personal guaranty against Plaintiff on Migizi's line of credit with Menards are illegal and declaratory relief as to that fact is appropriate.

47.   Upon information and belief, Defendant HRC later sold, transferred, or attempted to legally assigned this alleged debt to Defendant HSBC.

48.   This apparent assignment by Defendant HRC to Defendant HSBC of its contractual rights for the personal guaranty with Plaintiff was made without notice or consent to Plaintiff, and therefore is ineffective as to Plaintiff.

49.   Plaintiff has not now consented to this assignment and/or Plaintiff objects to the pretended assignment by Defendant HRC of non-existent contractual rights to Defendant HSBC.

*Impermissible Credit Report Inquiry*

50.   Upon information and belief, Defendant HSBC retained Defendant CRI to collect this debt from Plaintiff.

51.   On March 12, 2009, Defendant CRI impermissibly obtained a copy of Plaintiff's personal Experian credit report.

52.   During a conversation on or about March 19, 2009, Defendant CRI's collection agent, Ben Collins, told Plaintiff that Defendant CRI would "ruin

his credit" if he did not pay this alleged debt on the Menard's account personal guaranty, which now amounted to more than $59,000.

53. This illegal inquiry by Defendant CRI into Plaintiff's personal credit report has the effect of lowering his credit score and damaging him personally and professionally, in that it reduces his ability to borrow funds necessary for his continued business activities and drives up the cost of credit for Plaintiff.

54. Defendants were on notice that Plaintiff disputed that he owed any money on this alleged debt, but placed the matter into collection anyway and have thereby caused him damage.

55. The impermissible use of Plaintiff's consumer credit report is a violation of numerous and multiple provisions of the Fair Credit Reporting Act ("FCRA"), including but not limited to 15 U.S.C. § 1681b, amongst others.

### *Declaratory Relief Necessary*

56. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties in that Plaintiff contends that Defendant HRC breached its contract with Plaintiff, and/or no contract for a personal guaranty ever existed, and whereas Defendants dispute this contention and by its conduct contends that such a personal guaranty does exist.

57.   Plaintiff desires a judicial determination of Defendants' rights and duties, and a declaration as to the existence or non-existence of the alleged personal guaranty, and if it so exists, the extent of the liability of Plaintiff to these Defendants, if any.

58.   A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain his rights and duties because Plaintiff's personal business affairs are seriously impaired and he is otherwise suffering a financial burden by this unsettled state of affairs.

59.   Plaintiff has already suffered from damage to his credit by Defendant CRI's inquiry appearing on his Experian credit report and by its continued threats to destroy his credit.

60.   Declaratory relief is therefore appropriate in order to bring peace to the parties and prevent Defendants from causing further unwarranted and unjust damage to Plaintiff's credit score and thereby causing damage to Plaintiff's business and real estate interests.

## TRIAL BY JURY

61.   Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## CAUSES OF ACTION

### COUNT I:  BREACH OF CONTRACT

62.  Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

63.  There was a contract for a personal guaranty between Plaintiff and Defendant HRC.

64.  Plaintiff offered to provide guaranty in exchange for the issuance of a Menard's credit line to Migizi conditioned upon timely notice of default and a credit limit of $10,000.

65.  Defendant accepted this offer and issued the line of credit.

66.  Defendant failed to fulfill its duties under the contract, namely, to provide Plaintiff with timely notice of default and a credit limit of only $10,000 to Migizi.

67.  Plaintiff has suffered actual damages in the form damage to his credit and credit defamation, as well as well emotional distress, in an unknown amount in excess of $75,000 as a result of Defendant's conduct as described herein.

68.  Plaintiff has also suffered from consequential damages in the form of lost professional time in an amount in excess of $10,000.00 as a result of this breach of contract by Defendant.

**COUNT II: NO CONTRACT IN THE ALTERNATIVE**

69.  Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

70. There was no contract for a personal guaranty between Plaintiff and Defendant HRC because Defendant HRC rejected the counteroffer made by Plaintiff and shown in Exhibit 1.

71. Therefore Defendants' attempts to enforce this non-existent contract is illegal and has directly and proximately resulted in serious damage to Plaintiff's credit score and business interests.

72. Plaintiff has suffered actual damages in an unknown amount in excess of $75,000 as a result of Defendants' conduct as more fully described herein.

73. Plaintiff has also suffered from consequential damages in the form of lost professional time in an amount in excess of $10,000.00 as a result of this attempt to enforce this non-existent contract by Defendants.

### COUNT III: CREDIT DEFAMATION BY DEFENDANT CRI

74. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

75. Defendant CRI's foregoing actions and omissions, including but not limited to making and reporting an inquiry on Plaintiff's Experian credit report and impermissibly obtaining the same on or about March 12, 2009, constitute credit defamation.

76. Defendant CRI's inquiry on the Plaintiff's Experian credit report shows that it is a collection agency and therefore others who might inquire on Plaintiff's

credit report would be falsely led to believe that Plaintiff has defaulted on one of his obligations, when Plaintiff has not.

77.    Defendant CRI's foregoing actions and omissions in this regard were intentional and malicious.

78.    As a result of Defendant CRI's intentional and malicious conduct in obtaining Plaintiff's personal credit report and the consequent credit defamation, Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses, loss of professional time, detriment to Plaintiff's credit rating, and emotional distress.

## COUNT IV: VIOLATIONS OF THE FCRA BY DEFENDANT CRI

79.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

80.    Defendant CRI willfully and/or negligently violated 15 U.S.C. § 1681b by impermissibly obtaining a copy of Plaintiff's personal credit report from Experian.

81.    As a result of Defendant CRI's violations of § 1681b, Plaintiff has suffered actual damages not limited to out-of-pocket expenses, detriment to Plaintiff's credit rating and emotional distress.

82.    Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. §§ 1681n and 1681o.

83.    Defendant CRI's actions and omissions were willful, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

84.    Plaintiff is entitled to recover costs and attorney's fees from Defendant CRI pursuant to 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays that judgment be entered against this Defendant for:

A. For a declaration that Defendant HRC's alleged personal guaranty is non-existent, or in the alternative, that it is unenforceable because of Defendant HRC's breach of contract;

B. For a declaration that Plaintiff owes Defendant HRC, Defendant HSBC, and Defendant CRI nothing on the basis of this alleged personal guaranty, or otherwise;

C. For actual damages for breach of contract in an amount in excess of $75,000;

D. For actual damages for credit defamation by Defendant CRI in an amount in excess of $75,000;

E. For consequential damages for breach of contract by all Defendants in the amount of at least $10,000;

F. For actual damages under 15 U.S.C. § 1681o;

G.  For punitive and/or statutory damages pursuant to 15 U.S.C. §
    1681n against Defendant CRI;

H.  For reasonable attorney's fees and costs pursuant to 15 U.S.C. §§
    1681n and/or 1681o against Defendant CRI;

I.  For attorneys fees;

J.  For costs and disbursements;

K.  For interest; and,

L.  For such other and further relief as may be just and proper.

Respectfully submitted,

Dated: April 8, 2009                    **BARRY & SLADE, LLC**

By:  **s/Peter F. Barry**
Peter F. Barry, Esq.
Attorney I.D.#0266577
2021 East Hennepin Ave, Suite 195
Minneapolis, Minnesota 55413-1773
Telephone:  (612) 379-8800
pbarry@lawpoint.com

pfb/ra                                  **Attorney for Plaintiff**

- 16 -

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA        )
                                   ) ss
COUNTY OF HENNEPIN      )

Plaintiff Robert L. Davidson, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

_____
Robert L. Davidson

Subscribed and sworn to before me
this 8th day of April, 2009.

_____
Notary Public

PETER FRANCIS BARRY
Notary Public-Minnesota
My Commission Expires Jan 31, 2010